[Cite as *State v. Sutton*, 2016-Ohio-7612.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103931**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MICHAEL SUTTON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-06-481840-D

**BEFORE:**   Celebrezze, J., McCormack, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   November 3, 2016

**ATTORNEY FOR APPELLANT**

Gregory Scott Robey
Robey & Robey
14402 Granger Road
Cleveland, Ohio 44137


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Gregory J. Ochocki
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, Michael Sutton, appeals from the denial of his motion for leave to file a motion for new trial filed eight years after he was convicted of attempted murder, felonious assault, inducing panic, failure to comply, and resisting arrest. Appellant claims the trial court abused its discretion in summarily denying the motion without a hearing. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

{¶2} Appellant was convicted of multiple offenses related to a drive-by shooting that occurred in the early morning hours of May 29, 2006. Appellant received a 46½-year sentence. In 2008, this court affirmed the jury's verdicts, but remanded for resentencing based on allied offenses. *State v. Sutton*, 8th Dist. Cuyahoga No. 90172, 2008-Ohio-3677.[1] After further proceedings in the Ohio Supreme Court and this court, appellant was resentenced. He was sentenced to 41½ years in prison and appealed to this court, where his sentence was affirmed. *State v. Sutton*, 8th Dist. Cuyahoga No. 97132, 2012-Ohio-1054.

{¶3} On August 21, 2015, appellant filed an inartfully titled motion for leave to file a motion for new trial. In all, he submitted transcripts of interviews of four purported witnesses, Maelynn Colvin, Vanetta Redding, Dovonna Corothers, and Greg

---

[1] A more detailed recitation of the facts can be found in this case at ¶ 2-6.

Jones; along with a written statement from Tyrell Bonner.

{¶4} Colvin said she met up with a group of friends at a Cleveland nightclub on May 28, 2006. She arrived late and did not actually go into the club, but she gave her two friends, Redding and Corothers, a ride home. She left the nightclub in a convoy of cars all traveling back to the same neighborhood. The convoy was driving home when a police car pulled out of a gas station on East 55th Street and Woodland Avenue, and attempted to stop the car in front of Colvin's. That car was occupied by appellant and three other people. She said a gold vehicle that was leading their convoy was the one whose occupants were responsible for any gunshots. She identified Willie Wayne Moore as the individual in that gold vehicle. She also stated she did not see any Lincoln Mark VIII that night, the make and model of the car at which bullets were fired. When asked if she was ever interviewed by a representative of appellant's, like an attorney, she said yes:

> INVESTIGATOR: Well, do you recall if, let me ask you this, do you recall having been contacted by a representative from [appellant's] attorney's office before his trial?
>
> COLVIN: No. I believe that I started really hearing from people after that trial.
>
> INVESTIGATOR: Okay. Previously, you indicated you were contacted by [the attorney assigned to represent appellant during his direct appeal and postconviction proceedings].
>
> COLVIN: Yes.

{¶5} Redding was also interviewed by an investigator. She stated she was in Colvin's car in the front passenger seat. Four cars had left the club together to travel

back to their neighborhood. Colvin's car was the third in the convoy, directly behind appellant's car. The three trailing cars stopped at a gas station to get some snacks near East 55th and Woodland, while the lead car continued on. According to Redding, appellant purchased food for everyone. The three cars left the parking lot after getting food, and the gold car rejoined the convoy in the lead again. About five minutes after getting back on the road, a police cruiser came up from behind and pulled appellant's vehicle over. Redding did not witness any gunfire coming from appellant's vehicle and stated that she heard a few gunshots while the group was stopped at the gas station.

{¶6} Corothers's statement indicates she was seated in a rear passenger seat of Colvin's car as the group drove back home from the club. She stated that as the convoy of cars headed home, the lead car, a gold car, separated from the group at the intersection of East 55th, Woodland, and Kinsman. She lost sight of the vehicle, and it later rejoined the group. She did not remember stopping at a store or gas station on the way home. As the group was driving home, a police cruiser came from behind them and pulled appellant's car over.

{¶7} Former Cleveland Police Officer Greg Jones provided a statement to an investigator in 2015. There, he took issue with the version of events set forth in the police report drafted by Cleveland Police Officer Daniel Lentz and Lentz's testimony during appellant's trial. Jones stated that he and his partner were in their police cruiser at the Marathon gas station at the corner of East 55th and Woodland. Officers Lentz and Michael Keane were also parked nearby in their own cruiser. While there, the officers

heard gunshots, looked down the street, and saw two cars driving at high rates of speed. The two police cruisers pulled out of the gas station and pursued the two vehicles. Officer Lentz was able to catch up to one vehicle. Once this vehicle stopped, people jumped out and ran. The driver, later determined to be appellant, stayed near the vehicle and was arrested. The other vehicle got away. Jones indicated that Officer Lentz could not have been truthful in his testimony at trial.

{¶8} Jones's statement also indicates he was contacted in 2013 and asked to provide a statement after being shown the police reports. He agreed, but no statement was taken at that time. He did not know why. Appellant did not offer the trial court any explanation for the roughly two-year delay between the 2013 visit Jones received from an investigator and the 2015 statement.

{¶9} Finally, appellant attached a written statement from Tyrell Bonner. He was at the same club as appellant and his friends on May 28, 2006. He stated that "Willie Wayne" and some other people got into a fight at the club that night and security kicked them out. The fight continued in the parking lot. He stated that "Willie Wayne" threatened those he was fighting with. He further offered that appellant was not involved in the fight.

{¶10} The trial court denied the motion without hearing, and appellant filed the instant appeal assigning two errors for review:

> I. The trial court erred and abused its discretion in summarily denying the appellant's motion for leave to file a new trial based upon newly discovered evidence.

II.   The trial court erred in summarily denying appellant's motion without making any factual findings or conclusions of law, or holding a hearing, thereby creating an abuse of discretion in denying appellant's motion for leave to file a motion for a new trial.

## II.   Law and Analysis

### A.   Motion for Leave to File a Motion for New Trial

{¶11} Crim.R. 33 provides an avenue for a post-judgment attack on a valid criminal conviction.  The rule provides for a number of situations where a criminal defendant may seek a new trial.  The relevant provision here is for newly discovered evidence:

> When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

Crim.R. 33(A)(6).   However, the rule has strict timing requirements:

> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict

was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

Crim.R. 33(B).

{¶12} According to the rule, one seeking a new trial based on newly discovered evidence after the period specified in the rule has expired, must first file a motion for leave to file a motion for new trial. The motion for leave must demonstrate that the movant was unavoidably prevented from discovering the new evidence that underpins a future motion for new trial.

> [A] party is unavoidably prevented from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and [with reasonable diligence,] could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial * * * .

*State v. Walden*, 19 Ohio App.3d 141, 145-146, 483 N.E.2d 859 (10th Dist.1984).

{¶13} This court reviews the denial of leave to file a delayed motion for a new trial for an abuse of discretion. *State v. Gray*, 8th Dist. Cuyahoga No. 94282, 2010-Ohio-5842, ¶ 17. An abuse of discretion connotes that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶14} Here, clear and convincing evidence does not exist to establish that appellant was unavoidably prevented from discovering the purported testimony of Colvin, Redding, and Corothers. These witnesses were friends or relatives of appellant and his codefendants, were with appellant and a large group of friends at the nightclub, and were in a convoy of cars that drove from the nightclub in Cleveland to their shared neighborhood. In fact, each of them were in the car directly behind the car appellant was driving. Appellant does not provide any indication why he was unavoidably prevented from learning of the existence of these potential witnesses prior to trial or within the 120-day period set forth in the rule. In fact, Colvin's statement to an investigator attached to appellant's motion indicates that she was previously contacted by an attorney representing appellant after his criminal trial ended.

{¶15} Appellant asserts on appeal that he did not know who was following him, and at oral argument, he asserted that the three females in the car behind his did not meet up with him at the club. However, Redding's statement indicates that appellant bought the three women food on the way home shortly before being pulled over. Colvin's statement further indicates that she did not arrive to the club in time to go inside, but the other two women were already there.

{¶16} It is apparent from the statements that appellant was not unavoidably prevented from discovering the existence of these three women as potential witnesses prior to the expiration of the 120-day period specified in Crim.R. 33.

{¶17} The statement from purported witness, Jones, indicated that the police report

and testimony of Officer Lentz at trial was different from his recollection of events. However, Jones testified at trial. There is no argument here that his testimony has changed. Further, appellant failed to provide this court with a transcript to review whether the substance of Jones's statements to investigators in 2015 were similar to his trial testimony, and whether Jones was asked questions similar to those asked by the investigator. This court is without the necessary materials to fully evaluate the claims made here.

{¶18} Further, the transcript of the interview with an investigator attached to appellant's motion for leave includes Jones stating he was contacted in 2013 and spoke to an investigator. The investigator showed Jones the police reports for the first time. Jones talked about providing a statement and agreed to do so. However, no statement appears to have been taken at that time. There is no indication in appellant's motion as to why there was approximately a two-year gap in the discovery of this witness and the filing of his motion for leave.

{¶19} This court recently addressed a motion similar in form to the one presented here. *State v. Washington*, 8th Dist. Cuyahoga No. 103875, 2016-Ohio-5329. There, this court faced a motion for leave to file a motion for new trial that was supported by the statement of a codefendant recanting his testimony. *Id*. at ¶ 7. The motion for leave was filed soon after Washington received a formal statement recanting trial testimony from a codefendant who testified against Washington, but three years after Washington had received a letter from this recanting witness indicating the witness lied during trial.

This court reiterated,

> even if a defendant has established that he was unavoidably prevented from filing his motion for a new trial within the time limits, if there was an "undue delay in filing the motion after the evidence was discovered, the trial court must determine if that delay was reasonable under the circumstances or that the defendant has adequately explained the reason for the delay."

*Id*. at ¶ 16, quoting *State v. Stansberry*, 8th Dist. Cuyahoga No. 71004, 1997 Ohio App. LEXIS 4561 (Oct. 9, 1997). This court determined the trial court did not abuse its discretion in denying Washington's motion, at least in part, because Washington did not explain the three-year gap. *Id.* at ¶ 17.

{¶20} Appellant attached his own affidavit to a supplemental filing. There, he stated he did not know about any of these purported witnesses and could not discover them because he was in prison. Appellant does not advance any reason for the delay in bringing these statements before the court. Appellant does not explain why he was not aware of his friends in the car behind him. Similarly, appellant does not explain why a statement from Jones was not obtained until two years after Jones agreed to give a statement when investigators showed Jones police reports that contradicted his recollections of the events leading up to appellant's arrest.

{¶21} Finally, Bonner's statement does not deal with whether appellant was involved in the drive-by shooting that resulted in his convictions. It does not have any

likelihood of changing the outcome of trial if it had been presented to the jury. Bonner offers that another individual may have had a reason to commit the crimes of which appellant was convicted. However, Bonner did not witness the shooting, and has no knowledge of the individuals involved.

{¶22} This court cannot say that the trial court abused its discretion in denying the motion for leave when the supporting evidence, on its face, demonstrates that it was not newly discovered, appellant was not unavoidably prevented from discovering the evidence, or the evidence appellant relies on was not timely brought to the court's attention. Therefore, appellant's first assignment of error is overruled.

## B. Failure to Hold a Hearing

{¶23} Appellant argues that the trial court must issue findings of fact and conclusion of law to indicate why it denied the motion when it does not hold a hearing. Appellant also argues the court should have held a hearing on the motion for leave.

{¶24} "The decision whether to grant or hold an evidentiary hearing on a defendant's request for leave to file a delayed motion for new trial falls within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *State v. Hill*, 8th Dist. Cuyahoga No. 102083, 2015-Ohio-1652, ¶ 16, citing *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, 869 N.E.2d 77, ¶ 19 (2d Dist.).

{¶25} Appellant argues that defendants are entitled to a hearing on their motion for leave when they "submit documents that on their face support [their] claim that [they

were] unavoidably prevented from timely discovering the evidence at issue." *State v. Mango*, 8th Dist. Cuyahoga No. 100490, 2014-Ohio-2768, ¶ 18, citing *McConnell* at ¶ 19.

While *Mango* does not deal with a motion for leave to file a motion for new trial, it does represent that where defendants have demonstrated by clear and convincing evidence that they were unavoidably prevented from the discovery of new evidence that would change the outcome of trial, the trial court should hold a hearing. However, as set forth above, appellant has not shown that he was unavoidably prevented from discovering the witnesses he relied on in his motion for leave or that his motion for leave was timely. Therefore, the trial court was not required to hold a hearing.

{¶26} Further, "[t]his court has already held * * * that trial courts have no duty to issue findings of fact and conclusions of law when denying motions for new trial in criminal cases." *State v. Brooks*, 8th Dist. Cuyahoga No. 75522, 1999 Ohio App. LEXIS 3596, 5-6 (Aug. 5, 1999), citing *State v. Girts*, 121 Ohio App.3d 539, 565, 700 N.E.2d 395 (8th Dist.1997). Appellant argues the trial court should have done so in this case when it denied the motion for leave without a hearing. Appellant does not point to any case law or statute requiring that a trial court issue findings of fact and conclusion of law when denying a motion for leave to file a motion for new trial. There is no justification offered for this court to depart from its prior case law dealing with the denial of a motion for new trial without a hearing. Therefore, we will not.

{¶27} Appellant's second assignment of error is overruled.

### III. Conclusion

**{¶28}** The statements on which appellant relies in his motion for leave to file a motion for new trial, on their face, demonstrate that appellant was not unavoidably prevented from the discovery of these witnesses or that the motion was timely. The statements from the three female witnesses establish that these three were known to appellant on the night of his arrest. While their statements were newly offered, the three women were not newly discovered as witnesses. The statement provided by Jones was substantially known to investigators in 2013, and appellant does not explain why a formal statement was not taken from Jones until 2015. Finally, the statement of Bonner demonstrates that he has no knowledge of the shootings of which appellant was convicted. The trial court did not abuse its discretion when it denied appellant's motion. For these same reasons, the court did not abuse its discretion when it denied the motion without holding a hearing.

**{¶29}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

TIM McCORMACK, P.J., CONCURS;
PATRICIA ANN BLACKMON, J., DISSENTS (WITH SEPARATE OPINION)

PATRICIA ANN BLACKMON, J., DISSENTING:

{¶30} I respectfully dissent from the majority's opinion. I would conclude that the court abused its discretion when it failed to hold a hearing on Sutton's motion for leave to file a motion for a new trial. Sutton's support for a new trial was his allegation of a newly discovered *Brady* violation by the police. In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1994, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution."

{¶31} The standard that a court applies to a newly discovered evidence claim is different than the standard for a *Brady* violation.

> [I]n determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."

*State v. Johnston*, 39 Ohio St.3d 48, 61, 529 N.E.2d 898 (1988), quoting *United States v.*

*Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1984).

**{¶32}** Colvin and Redding claim that they gave statements to the police after the incident that no shots were fired from Sutton's vehicle. These statements were not given to Sutton or his counsel, and are not part of the record. Additionally, Jones claims that he never saw the police report filed by Officers Keane and Lentz until the private investigator interviewed him in 2013. According to Jones, the police report is an inaccurate representation of the events in multiple areas. For example, Jones alleges that none of the officers saw where the shots were fired from; rather, they were all in a position to only hear the gunshots. According to Jones, the police were aware of these discrepancies prior to trial. Another example follows:

> Yes, we spoke with the detective. He was going over the report, which I had never read. And the detective mentioned, he said, yeah, it says here that * * * these guys were shooting at you, at you guys, meaning us officers. We were surprised, Lundy and myself * * * because we knew that night that nobody shot at us. So, we looked at the detective and told him, we told him that nobody shot at us that night. * * * I don't know where that's coming from, but nobody shot us, shot at us that night. So, the detective left to go talk to the prosecutor. That's what he said he was going to do. He came back a short time later and said that the prosecutor said that we could leave. And that was the last time that I had any dealings with the case.

**{¶33}** In conclusion, I would find that, had this evidence been known to the defense, there is a reasonable probability that the outcome of Sutton's trial would have been different.