[Cite as *State v. Phillips*, 2017-Ohio-7164.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 104810

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KENNY PHILLIPS

DEFENDANT-APPELLANT

---

## JUDGMENT:
### REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-06-481840-C

**BEFORE:** Boyle, J., Kilbane, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** August 10, 2017

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender
BY:   Joanna Lynn Sanchez
Assistant State Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Gregory J. Ochocki
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Kenny Phillips, appeals from a trial court judgment denying his motion for leave to file a motion for new trial. On appeal, Phillips raises three assignments of error for our review:

1. The trial court abused its discretion when it failed to grant Phillips's motion for leave to file a motion for new trial or hold a hearing where he established that the state failed to disclose material exculpatory evidence, in violation of his right to due process.

2. The trial court abused its discretion when it failed to grant Phillips's motion for leave to file a motion for new trial when the record demonstrated by clear and convincing proof that Phillips was unavoidably prevented from discovering the evidence within 120 days of his conviction.

3. The trial court abused its discretion when it failed to hold a hearing on Phillips's motion for leave to file a motion for new trial when the record and circumstances supported Phillips's claim that he was unavoidably prevented from discovering the new evidence.

{¶2} We find merit to Phillips's third assignment of error and reverse and remand for a hearing on Phillips's motion.

## I. Procedural History

{¶3} In 2007, Phillips, then a teenager, was tried before a jury and convicted of several felony crimes including four counts of attempted murder, six counts of felonious assault, and one count each of felonious assault and attempted felonious assault on a police officer. All charges arose out of his alleged involvement in a drive-by shooting incident that left two persons permanently injured. The trial court sentenced Phillips to 92 years in prison.

{¶4} On direct appeal, this court affirmed the jury's findings of guilt, but remanded for resentencing. *See State v. Phillips*, 8th Dist. Cuyahoga No. 96329, 2012-Ohio-473. Upon remand, the trial court reduced Phillips's sentence to 65 years of imprisonment. In Phillips's direct appeal, we set forth the state's evidence as follows:

> Phillips's convictions resulted from an early morning incident on May 26, 2006 at the intersection of East 55th Street, and Kinsman and Woodland Avenues. Phillips, Michael Sutton, Deante Creel, and Akeem Tidmore were together in a tan Chevrolet Caprice heading southbound on East 55th Street. The Chevrolet was "boxy" and had "84" printed on its side ("Chevy 84"). Officers Michael Keane and Daniel Lentz were heading northbound on East 55th Street when Keane observed Chevy 84 make a reckless u-turn. Keane, weaving through traffic to catch up, saw Chevy 84 turn right and head east on Woodland.

> Keane and Lentz heard a gunshot as they turned right on Woodland. They saw Chevy 84 moving alongside a Lincoln Mark VIII ("Lincoln"). Keane and Lentz heard more gunshots and saw muzzle flashes between Chevy 84's passenger side and the Lincoln's left side. Lentz described the muzzle flashes as cone-shaped strobing, meaning the gunshots were coming from Chevy 84.

> Keane activated his lights and siren and pursued Chevy 84. Chevy 84 first slowed down, but accelerated and turned south on East 65th Street. Keane followed Chevy 84. As Chevy 84 pulled over, four passengers exited and ran. Keane chased the driver, Michael Sutton, and took him into custody.

> Lentz saw two males exit the passenger side. They both wore white t-shirts and carried handguns. The two men ran toward a nearby house. A third male, dressed in black, also exited the passenger side and ran in a different direction.

> Since they carried handguns, Lentz followed the first two men behind the house. When attempting to retrieve his flashlight, Lentz heard three gunshots from two different caliber weapons, and observed strobing and star-patterned muzzle flashes. He turned back and nearly collided with one of the men, who took off running. As Lentz chased him, Lentz saw him throw something into a field. Lentz tackled the man, Deante Creel,

and took him into custody.

Meanwhile, Officer Keane also heard gunshots coming from the direction where Lentz chased the two men. He saw Lentz tackle Creel. Seeing Lentz had Creel under control, Keane continued searching for the other two men who exited from Chevy 84.

Keane saw a man running on East 61st or 63rd Street. Keane exited his cruiser and chased the man until Keane fell and tore his calf muscle. Lentz saw Keane fall to the ground, and thought Keane was shot. After a zone car picked up Creel, Lentz chased and apprehended the man, Kenny Phillips, as he attempted a return to Chevy 84.

Both Phillips and Creel wore light-colored shirts at the time of their arrest. A zone car picked up the fourth male, Akeen Tidmore, who wore dark clothing.

As a result of the shooting, Kenneth Tolbert, the driver of the Lincoln, suffered paralysis to one side of his face from a gunshot wound to the head. Christopher Lovelady, who was behind Kenneth, suffered blindness to one eye from a gunshot wound to the head. Kevin Tolbert, the front passenger, and Leonard Brown, seated in the back passenger seat, were not injured. Bullet holes were located on the Lincoln's left side.

Phillips's hands and the passenger door window area of Chevy 84 tested positive for gunshot residue. Phillips denied, however, having a weapon when exiting Chevy 84. The hands of Creel, Sutton, and Tidmore all tested negative.

Phillips, Creel, and Sutton collectively maintained that a gold car pulled up beside the black Lincoln, and an arm exited the gold car's window and fired gunshots into the Lincoln. According to them, the Lincoln stopped, the gold car left, and Chevy 84 pulled to the side to allow the police to chase after the gold car. Officers Keane and Lentz both testified, however, that they did not follow the gold car because the muzzle flashes came from Chevy 84.

*Id*. at ¶ 4-14.

## II. Motion for New Trial

{¶5} In December 2015, Phillips filed a motion for leave to file a motion for new

trial and requested a hearing. Phillips asserted in his motion that there was newly discovered evidence in his case and that he was unavoidably prevented from discovering the same prior to the deadline for filing a motion for new trial. The newly discovered evidence referred to was the statements of former Cleveland police officer Gregory Jones and Cleveland police officer John Lundy, who were stationed in close proximity to the scene of the shooting on the morning of May 26, 2006. If believed, the officers' statements, as outlined in separate sworn affidavits attached to the motion, call into question the accuracy and truthfulness of Officers Lentz's and Keane's testimony at trial and raise questions about possible *Brady* violations by the prosecution.

{¶6} Phillips attached Jones's November 24, 2015 affidavit to his motion for leave. In it, Jones avers that on the night of May 26, 2006, he was parked at a Marathon gas station near the corner of East 55th Street and Woodland Avenue, with his then-partner Officer Lundy. While at the gas station, Jones and Officer Lundy heard gunshots that would later be attributed to the drive-by-shooting incident for which Phillips and his codefendants were convicted.

{¶7} According to Jones, Officers Keane and Lentz were also in the Marathon parking lot at the time of the shooting event and were not behind Sutton's car. Jones avers that it was only after hearing gunshots that a car sped by at a high rate of speed, at which point Keane and Lentz left the Marathon gas station and pursued Sutton's car. Jones states that Keane and Lentz were not in a position at the Marathon gas station to see the shooting, and thus, could not have seen gunshots fired from Sutton's car into the

Lincoln. Further, Jones states in his affidavit that neither he nor Officer Lundy heard any additional shots fired while they, along with Officers Keane and Lentz, pursued Phillips and the other suspects on foot. According to his affidavit, Jones states that both he and Officer Lundy told a supervising detective working on the case that they did not hear any additional gunshots. Jones further states that the detective relayed this fact to the prosecutor but neither the detective nor the prosecutor ever asked about it again.

{¶8} Phillips also attached Officer Lundy's December 18, 2015 affidavit that corroborated Jones's statements that no further gunshots were fired while the officers pursued the suspects on foot. The affidavit did not expound on Officers Keane and Lentz's location at the time of the shooting or whether Officer Lundy disclosed to the detective that he had not heard additional gunfire while pursuing the suspects.

{¶9} Further, Jones claimed in his affidavit that he did not read the police report of the incident until February 2014, when a wrongful conviction project investigator contacted him. It was then that he learned of Officers Lentz's and Keane's claims that they were driving behind Sutton's car when they saw shots fired from the vehicle into the Lincoln and that more shots were fired during the foot pursuit. According to the affidavit, Jones was surprised by this information because it was inconsistent with what he had observed. Moreover, Jones explained in his affidavit that when he was first confronted with the knowledge that Officers Keane and Lentz might not have been truthful in their testimony, at that time he was unwilling to sign an affidavit because he was "dealing with [his] own legal issues" and "was worried that becoming involved in

[Phillips's] case would impact [his own] case." He ended the affidavit by stating that he was now willing to tell the court about what he observed.

{¶10} Phillips further attached to his application for leave an affidavit of Ohio public defender wrongful conviction project investigator Larry VanCant II. In his affidavit, VanCant averred that he first interviewed Jones in February of 2014. At that time, Jones provided him the information that he would eventually swear to in his November 24, 2015 affidavit. According to VanCant, Jones refused to sign the affidavit or testify on the issue in February 2014 because of a pending criminal case against him at that time. VanCant stated further that he attempted to contact Officer Lundy several times between February 4, 2014 and December 17, 2015, by visiting his last known address, leaving business cards there and speaking with his mother and son to pass his contact information to Officer Lundy. According to the affidavit, Officer Lundy did not contact VanCant until December 17, 2015, at which point VanCant spoke with Officer Lundy about Phillips's case.

{¶11} In addition to the information contained in the attached affidavits, Phillips argued in the body of his motion for leave that he was unavoidably prevented from discovering the new evidence because, although the wrongful conviction project attempted to interview Officer Lundy numerous times following the conviction, Officer Lundy refused to give an interview until December 2015. Phillips further explained that he was unavoidably delayed from discovering the extent of Jones's knowledge because the prosecution did not disclose the variations in what Jones observed compared to

Officers Keane's and Lentz's statements in the police report and testimony at trial.

{¶12} Phillips argued that the state's nondisclosure amounted to a suppression of favorable evidence to the accused that resulted in a violation of his due process rights as outlined in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Phillips also explained that any delay between discovery of Jones's knowledge of the case in February 2014, and the filing of the motion for leave to file a delayed appeal in December 2015, was necessitated by Jones's refusal to sign an affidavit until the conclusion of his own criminal case and Lundy's refusal to speak with investigators until December 2015.

{¶13} The state opposed Phillips's Crim.R. 33(B) motion for leave to file a motion for new trial on the grounds that Phillips failed to show he was unavoidably prevented from discovering the evidence needed to support his motion for new trial because Phillip did not include any evidence "documenting what steps— if any — were taken to find this 'newly discovered evidence' from the time of Phillips's conviction and initial sentencing in June 2007 through February 2014."   The state further argued that because Jones was a rebuttal witness at trial and appeared along with Officer Lundy as a potential witness on the state's witness list, Phillips could have discovered the evidence before February 2014.

{¶14} On July 5, 2016, the trial court overruled the motion without a hearing, stating that Phillips "failed to show by clear and convincing evidence that he was unavoidably prevented from discovery what has been proffered as new evidence."   It is

from that decision that Phillips now appeals.

### III. Analysis

{¶15} Because we find Phillips's third assignment of error dispositive of the instant appeal, we will address it first. In his third assignment of error Phillips argues that the trial court abused its discretion in failing to hold a hearing on his motion for leave. We agree.

{¶16} A motion for new trial based on newly discovered evidence must be filed within 120 days of a jury verdict unless the petitioner demonstrates by clear and convincing proof that he was unavoidably prevented from discovering the evidence upon which he must rely. Crim.R. 33(B). A party is "unavoidably prevented" from discovering evidence if the party had no knowledge of the existence of the grounds supporting the motion and could not have learned of that existence in the exercise of reasonable diligence within the time prescribed by the rule. *See State v. Gray*, 8th Dist. Cuyahoga No. 2010-Ohio-11, ¶ 17 quoting *State v. Lee*, 10th Dist. Franklin No. 05AP-229, 2005-Ohio-6374, ¶ 7.

{¶17} In order to file a motion for new trial based on newly discovered evidence that was discovered beyond the 120 days prescribed in Crim.R. 33, a petitioner must first file a motion for leave to file a delayed motion for new trial. In it, the petitioner must show by "clear and convincing proof that he has been unavoidably prevented from filing a motion in a timely fashion." *Id*. at ¶ 13, quoting *State v. Morgan*, 3d Dist. Shelby No. 17-05-26, 2006-Ohio-145, ¶ 9. Clear and convincing proof "is that measure or degree of

proof [that] is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' * * * and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E. 2d 118 (1954), paragraph three of the syllabus.

**{¶18}** In addition to showing an unavoidable delay in discovering the evidence, the petitioners must also show that they filed their motion for leave within a reasonable time after discovering the evidence. *Id*. at ¶ 18. Whether a delay is reasonable depends on the facts and circumstances surrounding the case and whether the petitioner has an adequate explanation for the delay. *Id*.

> **{¶19}** Furthermore Ohio courts recognize that
>
> [a] trial court's decision "whether to conduct an evidentiary hearing on a motion for leave to file a motion for a new trial is discretionary and not mandatory." *State v. Cleveland*, 9th Dist. No. 08CA009406, 2009-Ohio-397, ¶ 54. A criminal defendant "is only entitled to a hearing on a motion for leave to file a motion for a new trial if he submits documents which, on their face, support his claim that he was unavoidably prevented from timely discovering the evidence at issue." *Id*., citing *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, ¶ 7, 869 N.E.2d 77 (2d Dist.). Thus, "no such hearing is required, and leave may be summarily denied, where neither the motion nor its supporting affidavits embody prima facie evidence of unavoidable delay." *State v. Peals*, 6th Dist. Lucas No. L-10-1035, 2010-Ohio-5893, ¶ 23.

*State v. Ambartsoumov*, 10th Dist. Franklin Nos. 12AP-878 and 12AP-877, 2013-Ohio-3011, ¶ 13.

**{¶20}** If the trial court finds that the documents submitted in support of a motion for leave clearly and convincingly demonstrate that the petitioner was unavoidably

prevented from discovering the evidence, then the court must grant the motion for leave to file a motion for new trial.  *State v. Glover*, 8th Dist. Cuyahoga Nos. 102828, 102829, and 102831, 2016-Ohio-2833, ¶ 28.

**{¶21}** This court reviews the denial of leave to file a delayed motion for new trial for an abuse of discretion.  *State v. Sutton*, 8th Dist. Cuyahoga No. 103931, 2016-Ohio-7612, ¶ 13.   We further review the decision on whether to hold a hearing on the motion for an abuse of discretion.  *Id*. at ¶ 24.   "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary, or unconscionable.  *In re C.K.*, 2d Dist. Montgomery No. 25728, 2013-Ohio-4513, ¶ 13, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 482 N.E.2d 1248 (1985).

**{¶22}** Phillips presented evidence in the form of two affidavits from a current and a former Cleveland police officer that, if believed, would seriously call into question the accuracy and truthfulness of Officers Keane's and Lentz's trial testimony. The affidavits further serve as a red flag for a potential *Brady* violation by the prosecution, as on their face they show that the state was aware of potentially material and exculpatory evidence and failed to disclose that evidence to the defense.

**{¶23}** Although the state argues on appeal that no *Brady* violation actually occurred, its argument puts the proverbial cart before the horse.  The proper place for that discussion is the new trial motion itself — if the court grants leave to file the motion.  At this point in the proceedings, it does not matter whether a *Brady* violation did occur, what matters is whether Phillips can show by clear and convincing evidence that he was

unavoidably prevented from discovering the potential violation during trial and the 120 days following. Pursuant to Ohio case law, Phillips is entitled to an evidentiary hearing on that question if he submits evidence that on its face shows he was unavoidably prevented from timely discovering the evidence at issue. *Ambartsoumov*,10th Dist. Franklin Nos. 12AP-878 and12AP-877, 2013-Ohio-3011, ¶ 13.

{¶24} Here, the evidence attached to Phillips's motion for leave to file a motion for new trial establishes a potential *Brady* violation on its face. In general, courts do not fault the defendant for failing to discover evidence of prosecutorial misconduct that would amount to a *Brady* violation. Indeed, because the state has a duty to disclose exculpatory evidence under *Brady v. Maryland*, the presumption, if anything, is that the state has complied with its duty. Faulting a criminal defendant for failing to discover the violation sooner, improperly and impermissibly reverses that presumption. Accordingly, where the evidence shows that a potential *Brady* violation occurred, the evidence on its face establishes unavoidable delay in the discovery of that evidence that would entitle a petitioner to a hearing on the issue.

{¶25} It is at the hearing on the motion for leave that the court must determine whether the petitioner met his burden of clearly and convincingly showing that he was indeed unavoidably prevented from discovering the evidence. Whether a petitioner can meet this burden depends on a number of factors and circumstances, including whether the person should have been aware of the potential *Brady* violation at a sooner date.

{¶26} Because Phillips submitted evidence that on its face showed he was

unavoidably prevented from discovering the evidence sooner, Phillips was entitled to a hearing on his motion for leave. We therefore agree with Phillips that the court abused its discretion when it concluded that Phillips did not meet his burden of proof, without first giving Phillips a chance to present his evidence in open court.

{¶27} Given the disposition on appeal, we find that the first and second assignments of error are moot. Accordingly, we reverse and remand to the trial court for a proper evidentiary hearing on the motion.

{¶28} Judgment reversed and remanded.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

MARY EILEEN KILBANE, P.J., and
LARRY A. JONES, SR., J., CONCUR