[Cite as *Sutton v. State*, 2024-Ohio-5911.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MICHAEL SUTTON, ET AL.,　　　　　:

　　　Plaintiffs-Appellees,　　　:

　　　　　　　　　　　　　　　　　　　No. 113710

　　　v.　　　　　　　　　　　　　:

STATE OF OHIO,　　　　　　　　　:

　　　Defendant-Appellant.　　　:

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 19, 2024

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-971137

---

### *Appearances:*

Friedman, Gilbert + Gerhardstein, Sarah Gelsomino, Marcus Sidoti, Elizabeth Bonham, and Jacqueline Greene, *for appellees*.

Dave Yost, Ohio Attorney General, Jennifer A. Driscoll, Andrew T. Gatti, Katherine E. Mullin, and Matthew P. Convery, Senior Assistant Attorneys General, *for appellant*.

---

SEAN C. GALLAGHER, J.:

{¶ 1} The State of Ohio appeals the trial court's decision granting Michael Sutton and Kenny Phillips's (collectively "plaintiffs") motions for summary

judgment declaring them to be "wrongfully imprisoned individuals" under R.C. 2743.48. For the following reasons, we affirm.

{¶ 2} Plaintiffs' convictions arose from a drive-by shooting that occurred in 2006. *State v. Phillips*, 2017-Ohio-7164, ¶ 4 (8th Dist.), citing *State v. Phillips*, 2012-Ohio-473 (8th Dist.). Two police officers, Michael Keane and Daniel Lentz, were on patrol and saw a Chevrolet vehicle make a "reckless" U-turn. *Id.* As Keane and Lentz turned a corner to follow the Chevy, they saw shots fired from the Chevy into another vehicle. *Id.* Keane and Lentz pursued the Chevy, with the occupants eventually abandoning their vehicle. *Id.* Sutton emerged from the driver's seat and was immediately detained. *Id.* Three others exited the vehicle but fled. Two wore white shirts and visibly possessed firearms. A third man, wearing all black, ran in a different direction. Lentz followed the men, who were armed. Three more gunshots were heard, and in the commotion, Lentz literally ran into one of the occupants, Deante Creel, who was then taken into custody. *Id.* As other officers arrived, Phillips was caught and detained as the other person seen exiting the vehicle with a firearm. *Id.* The fourth individual, Kenneth Tolbert, was arrested shortly after. Only Phillips's hands tested positive for gunshot residue.

{¶ 3} All four defendants maintained that a third vehicle, a gold-colored car, was the source of the shots and that Sutton merely pulled over after the codefendants witnessed the shooting to allow the police officers to pursue that vehicle. *Id.* No one debated where the shooting took place, in other words, that the shooting occurred where the officers said. *Id.* The arresting officers testified,

however, that they saw the shots coming from the Chevy, not the gold-colored car. The jury believed the officers.

{¶ 4} Upon that evidence, both Phillips and Sutton were convicted of various shooting-related offenses resulting in lengthy prison sentences — 65-year and 41.5-year terms, respectively.

{¶ 5} In 2017, Sutton obtained statements from a former police officer, Gregory Jones, claiming that the events unfolded differently. Jones claimed the shooting occurred while all four officers (paired in two patrol cars) were in the parking lot of a Marathon gas station and the events did not happen as Lentz or Keane testified. Further, Jones claimed that he heard no additional gunshots at the time Lentz pursued Creel and Phillips. Jones, by that time, had been removed from the police force based on a conviction for rape that led to a period of incarceration following the felony conviction. *State v. Sutton*, 2016-Ohio-7612, ¶ 7 (8th Dist.). The trial court's denial of Sutton's motion for new trial was affirmed. *Id.*

{¶ 6} Phillips filed a motion for new trial around the same time in a separate action. *Phillips*, 2017-Ohio-7164 (8th Dist.). Phillips presented the same statements from Jones, but also included an affidavit from Officer John Lundy, Jones's ex-partner, who corroborated Jones on only one point, that he did not hear additional gunshots when Lentz was chasing after Phillips and Creel. *Id.* at ¶ 7. The appellate panel in *Phillips* reversed the trial court's decision denying a motion for new trial without hearing and remanded the matter for a hearing.

{¶ 7}  Sutton then renewed his motion, and the cases proceeded together. Sutton and Phillips claimed they were entitled to a new trial because the State withheld exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963),[1] the testimony from two of the four responding officers, Jones and Lundy, who offered new information pertaining to the shooting. *State v. Sutton*, 2021-Ohio-854.  According to Jones and Lundy, the shooting occurred in the gas station parking lot and not on the street as the other officers testified.  *Id.*  In addition, they claimed to have seen the defendants exit the Chevy but did not see any firearms being carried.  *Id.*  Both officers were originally on the State's witness list, but only Jones testified at trial.  He did not mention the differing account at the time of trial. Neither appear to have addressed the defendants' original claim that the shooting occurred from the gold-colored car that was on the street next to the vehicle containing the victims.

{¶ 8}  The State posited that Jones's new testimony was impacted by his incarceration for rape.  *Id.* at ¶ 119-125.  An investigator with the Wrongful Conviction Project in the Office of the Ohio Public Defender first met with Jones in 2014 (before Sutton's original postconviction proceedings were initiated), but Jones refused to sign any statement "until his pending criminal case was resolved." *Id.* at ¶ 121.  At the time, Jones was under indictment for rape.  After being incarcerated in prison on the eventual felony conviction, Jones had been discussing the matter with

---

[1] Any reference to the *Brady* Rule or a *Brady* violation as used throughout this opinion are express references to claims arising under *Brady*, 373 U.S. 83.  *See also* R.C. 2743.48(J)(1).

Phillips and a relative of Phillips and was again contacted by the investigator. Jones then contacted Lundy but claims to have been unsuccessful in his attempts. The trial court deemed Jones and Lundy's account somewhat incredible, given the timing of the disclosure, Jones's refusal to commit to his statement until after his criminal case had ended, and Jones's contact with the Phillips and Lundy.

{¶ 9} The appellate panel in the postconviction proceeding discounted that theory of impeachment because "[l]ogic would require that the police would not invent information that hurts a change of conviction." *Id.* at ¶ 128. The panel concluded that Jones's legal troubles and incarceration were irrelevant, and any motive to fabricate a different story based on Jones's incarceration was speculative. *Id.* at ¶ 126. In part relying on studies suggesting "that African-Americans are disproportionately and often wrongfully convicted[,]" the panel concluded that "[d]ue process has been denied and a new trial required 'if there is any reasonable likelihood that the [allegedly] false testimony could have affected the judgment of the jury.'" *Id.* at ¶ 144, 153, quoting *Hastings v. Berghuis*, 2017 U.S. App. LEXIS 28061, *6 (6th Cir. May 9, 2017). According to the panel, the newly discovered evidence from Jones and Lundy could have been used for impeachment at the original trial, and therefore, the undisclosed evidence constituted a *Brady* violation entitling the defendants to a new trial. *Id.* at ¶ 155.

{¶ 10} Upon remand, the State immediately pursued a criminal proceeding against Sutton and Phillips based on acts associated with the reversed conviction.

Ultimately, the defendants were acquitted at the new trial, but neither Jones nor Lundy testified.

{¶ 11} Thereafter, both Sutton and Phillips filed an action to be declared "wrongfully imprisoned individuals" under Ohio's wrongful-imprisonment statute, which was amended in 2019 to its current version. *See Lemons v. State*, 2020-Ohio-5619, ¶ 58 (8th Dist.). It provides an avenue of compensation for individuals who are deemed "wrongfully imprisoned." R.C. 2743.48 "places the burden on a claimant to prove by a preponderance of the evidence that he or she meets the definition of a 'wrongfully imprisoned individual.'" *Bundy v. State*, 2015-Ohio-2138, ¶ 15, quoting *Doss v. State*, 2012-Ohio-5678, paragraph one of the syllabus. The claimant must satisfy each of the five requirements of R.C. 2743.48(A) in order to be deemed a wrongfully imprisoned individual. *See Bundy* at ¶ 15. A "wrongfully imprisoned individual" is a person who can demonstrate that (1) they were charged with an aggravated felony, felony, or misdemeanor by indictment or information; (2) they were found guilty of, but did not plead guilty to, an aggravated felony, felony, or misdemeanor, or any lesser-included offenses; (3) they were sentenced to a term of imprisonment; (4) no criminal proceeding is pending against them, *and* within one year after the date of vacating, dismissing, or reversing a conviction, the State has not sought further appeal or brought a criminal proceeding against them for any act associated with the vacated, reversed, or dismissed conviction; and (5) either an "error in procedure" was discovered that (a) occurred before, during, or after sentencing, (b) that involved a violation of the *Brady* Rule; and (c) "that resulted in

the individual's release" or it is determined that the individual did not commit the offense or offenses at issue. R.C. 2743.48(A). In order to be declared a "wrongfully imprisoned individual," the person must demonstrate each of the five factors, without exception. *Jackson v. State*, 2021-Ohio-1409, ¶ 17-18 (8th Dist.).

{¶ 12} If a common pleas court determines all five requirements are satisfied and declares the claimant is a "wrongfully imprisoned individual," then the claimant is entitled to pursue an action in the Court of Claims against the State for monetary compensation. *Bundy* at ¶ 16. The terms of eligibility and the relief provided in R.C. 2743.48 demonstrate that the State's liability is "narrow in that only a very limited class of individuals can meet the five simple but strict requirements of R.C. 2743.48(A)." *Bundy* at ¶ 17. "The wrongful imprisonment statutes were intended to compensate the innocent for wrongful imprisonment. They were never intended, however, to compensate those who had merely avoided criminal liability." *Chandler v. State*, 95 Ohio App.3d 142, 147-148 (8th Dist. 1994), citing *Walden v. State*, 47 Ohio St.3d 47, 52 (1989).

{¶ 13} Despite the fact that the plaintiffs arguably defended against a criminal proceeding brought by the State within a year of the reversal of their convictions in 2021, an issue that could arguably deprive Sutton and Phillips of the ability to be declared "wrongfully imprisoned individuals" under R.C. 2743.48(A)(4)(c), the State expressly conceded that both plaintiffs undisputedly demonstrated the factors delineated under R.C. 2743.48(A)(1)-(4). The reasons for the State's concession are not immediately clear to this panel in light of the

procedural history and the plain language of those subdivisions. But nonetheless, the entire focus in this appeal is on subdivision (A)(5) of that statutory section.

{¶ 14} The State presents two arguments in this appeal. It first argues that the question of whether Sutton and Phillips can demonstrate a *Brady* violation is an issue that the trial court should have resolved in the proceedings below despite the implications of issue preclusion as discussed in *Lemons*, 2020-Ohio-5619, at ¶ 34-54. In *Lemons*, the panel concluded that the State, when the trial court considers whether an individual is a wrongfully imprisoned individual, cannot relitigate the *Brady* violation question, which necessarily predates the wrongful-imprisonment action. In light of *Lemons*, we need not consider the State's first argument.

{¶ 15} The State is essentially asking this panel to create a conflict with *Lemons* and also to arrive at a different conclusion from that which was reached in *Sutton*, 2021-Ohio-854, namely, by asking this panel to conclude that no *Brady* violation actually occurred. As the State concedes, *Lemons* expressly concluded that the *Brady* violation question leading to the individual's release, which necessarily occurs in a separate proceeding, cannot be relitigated during the wrongful-imprisonment action. For this reason, we overrule any argument pertaining to that question. We have not been provided a compelling reason to create a conflict on this issue, and the State is rehashing arguments similar to those raised and overruled in *Lemons*. Our focus is therefore on the "release" language under R.C. 2743.48(A)(5). The question of whether the error in procedure identified in *Sutton*, 2021-Ohio-854

has been resolved and is not subject to renewed arguments. In light of *Lemons*, we need not consider that argument further.

{¶ 16} The sole remaining issue preserved and argued to the trial court (and this panel for that matter) focuses on the first alternative to the fifth factor under subdivision (A)(5), that an error in procedure (the *Brady* violation) resulted in the individuals' release. The trial court, in finding in the plaintiffs' favor upon competing motions for summary judgment, concluded that *Sutton,* 2021-Ohio-854, found a *Brady* violation occurred, and therefore, "the record is clear that this led to plaintiffs' release from prison." The parties' primary focus in this appeal is the meaning of the term "release" as used in R.C. 2743.48(A)(5) and whether the trial court's granting of summary judgment in the plaintiffs' favor was correct.

{¶ 17} Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Argabrite v. Neer*, 2016-Ohio-8374, ¶ 14. Summary judgment is appropriate only when "[(1)] no genuine issue of material fact remains to be litigated, [(2)] the moving party is entitled to judgment as a matter of law, and, [(3)] viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach a conclusion only in favor of the moving party." *Id.*, citing *M.H. v. Cuyahoga Falls*, 2012-Ohio-5336, ¶ 12. In a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate their entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving

party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet its burden once that burden arises. *Id.*

{¶ 18} The pertinent portion of R.C. 2743.48(A)(5) requires an individual wishing to be declared a "wrongfully imprisoned individual" to demonstrate either that an "error in procedure was discovered [(1)] that occurred prior to, during, or after sentencing, [(2)] that involved a violation of the *Brady* Rule which violated the individual's rights to a fair trial under the Ohio Constitution or the United States Constitution, and [(3)] that resulted in the individual's release" or that the individual did not commit the offense for which they were found guilty or that no offense was actually committed.

{¶ 19} The State argues that Sutton and Phillips failed to demonstrate that "an error in procedure . . . resulted in the individual's release" as required under R.C. 2743.48(A)(5). According to the State, the error in procedure, in this case a *Brady* violation that occurred before trial, did not result in their "release." Instead, the *Sutton* panel found that a new trial was warranted under Crim.R. 33 and because Sutton and Phillips remained in local confinement pending the new trial, they were not immediately released. In addition, the State claims that the trial court added language that is not present in the statute in concluding that "the record is clear that" the error in procedure "led to plaintiffs' release *from prison*." (Emphasis added.)

Thus, the State is essentially claiming that the term "release" has broader context than simply referring to an individual's "release" from imprisonment.

{¶ 20} Sutton and Phillips, on the other hand, claim that the trial court made no mistake in interpreting and applying R.C. 2743.48(A)(5) because in *Lemons*, 2020-Ohio-5619, a panel from this district concluded that the "statute explicitly requires only that the error in procedure, *the Brady violation*, resulted in [the plaintiff's] release from prison." (Emphasis in original.) *Id.* at ¶ 60. Because the panel's language mirrored that of the trial court in this case, according to Sutton and Phillips, the trial court's conclusion was correct. Further, Sutton and Phillips argue that because the subsequent trial led to their acquittal, they were "released" under the meaning of R.C. 2743.48(A)(5), implying that "released" is dependent on the outcome of the new trial. But importantly, within that argument, Sutton and Phillips agree with the State that appellate courts "'may not add words to an unambiguous statute, but must apply the statute as written[,]'" citing *State v. Lowe*, 2007-Ohio-606, ¶ 15; *Portage Cty. Bd. of Commrs. v. Akron*, 2006-Ohio-954, ¶ 52; *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127 (1969). All parties otherwise claim the statute is unambiguous.

{¶ 21} As the Ohio Supreme Court has maintained, "when analyzing an issue of statutory interpretation, '[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact.'" *State v. Bollar*, 2022-Ohio-4370, ¶ 10, quoting *State v. Hudson*, 2022-Ohio-1435, ¶ 21. "If the statute's language is plain and unambiguous, [courts] apply it as written." *Bollar* at

¶ 10, citing *Portage Cty. Bd. of Commrs.* at ¶ 52. Courts, therefore, "'must give effect to the words used, refraining from inserting or deleting words.'" *State v. Gonzales*, 2017-Ohio-777, ¶ 4, quoting *Cleveland Elec. Illum. Co. v. Cleveland*, 37 Ohio St.3d 50, 53-54 (1988).

{¶ 22} In this case, the error in procedure identified by Sutton and Phillips resulted in the granting of a new trial under Crim.R. 33, which necessarily required their release from the terms of imprisonment originally imposed because those convictions had been vacated. *Sutton*, 2021-Ohio-854, at ¶ 157. Under R.C. 2953.13, the statute setting out the procedure used when a conviction is reversed or remanded to the trial court by a court of review, a warden of a State correctional institution must "cause the defendant to be conveyed to the jail of the county in which the defendant was convicted, and committed to the custody of the sheriff of that county" when a new trial is granted and no discharge is ordered. Thus, Sutton and Phillips were released from their respective imprisonments as a result of the error in procedure identified in *Sutton*, 2021-Ohio-854, but then conveyed to the custody of the county sheriff subject to local incarceration pending the new trial. The question remaining is whether that conveyance to pretrial detention has any significance to R.C. 2743.48(A)(5). In other words, does the conveyance to pretrial detention negate Sutton and Phillips's release for the purposes of R.C. 2743.48(A)(5)? We conclude that it does not.

{¶ 23} The State argues that "release" should broadly mean "a discharge from duty or from confinement as a prisoner," citing *Ballentine's Law Dictionary*

(3d Ed.), in the context of R.C. 2743.48(A)(5), and that Sutton and Phillips "were not 'finally and completely free from custody and bond conditions' until they were acquitted following retrial." Conceivably, this would mean any individual who has been granted a new trial based on a *Brady* violation (the error in procedure) would not be able to demonstrate that they were "released" unless the *Brady* violation led to immediate discharge or an acquittal following retrial. The State's focus on a single word from a lengthy statutory provision is too broad. The entirety of the statute must be considered. "Release" in the context of R.C. 2743.48(A)(5) is narrower.

{¶ 24} On this point, it is important to note that the potential for a new trial (and thus the possibility of a pretrial detention pending retrial regardless of the potential for an acquittal) is contemplated under other subdivisions of R.C. 2743.48. Under R.C. 2743.48(A)(4), in order to be declared a "wrongfully imprisoned individual," the plaintiff must demonstrate that the conviction was "vacated, dismissed, or reversed on appeal" and that (1) no criminal proceeding is pending for any act associated with that conviction, (2) that the prosecuting attorney in the case has not sought further appeal (by right or by leave of court) of the vacating, dismissal, or reversal of the conviction within one year, *and* (3) that the

> prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation, within one year after the date of the vacating, dismissal, or reversal has not brought a criminal proceeding against the individual for any act associated with that conviction . . . .

*Id.* "'Criminal proceeding' is defined as a 'proceeding instituted to determine a person's guilt or innocence or to set a convicted person's punishment; a criminal

hearing or trial.'" *State v. Stanovich*, 2007-Ohio-4234, ¶ 16 (3d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004).

{¶ 25} As a result, the statute contemplates continued prosecution of any act associated with the reversed and vacated conviction, which necessarily includes the possibility of pretrial detention and a retrial during that criminal proceeding. If that prosecution is brought within one year following the reversal, dismissal, or vacating of the conviction, and regardless of whether the individual is detained in local jail pending trial, the individual will be unable to demonstrate the R.C. 2743.48(A)(4) factor. If the individual cannot demonstrate that the State has not brought a criminal proceeding for any act associated with the reversed, dismissed, or vacated conviction, then he cannot be declared wrongfully imprisoned. The State thus has a powerful tool to limit its liability in wrongful-imprisonment cases.

{¶ 26} Similarly, if the State has not "brought a criminal proceeding against the individual for any act associated with" the reversed and vacated conviction within one year, the individual can nonetheless be declared wrongfully imprisoned and even recover monies in an action in the Court of Claims. However, if a criminal proceeding is brought after the year deadline and an individual has already received a sum of money paid under judgment from the Court of Claims, the individual must reimburse the State for the entire sum of money obtained following a reconviction. R.C. 2743.48(F)(5).

{¶ 27} In both of those situations, the legislature has provided for the situation in which continued prosecution of the original charges occurs or leads to a

retrial and deprives the individual of the ability to demonstrate one of the factors necessary to being declared "wrongfully imprisoned." The State's broad reading of "release" to mean "finally and completely free from custody and bond conditions until [the individual is] acquitted following retrial" cannot be accepted. That reading of subdivision (A)(5) would render R.C. 2743.48(A)(4)(c) and (F)(5) a nullity — there would be no point for the legislature to include the retrial and clawback provisions if the State were correct. "[C]ourts must give effect to all of a statute's terms and avoid a construction that renders any part of the statute superfluous." (DeWine, J., dissenting.) *Gabbard v. Madison Local School Dist. Bd. of Edn.*, 2021-Ohio-2067, ¶ 121, citing *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 10, 14, and *State v. Reed*, 2020-Ohio-4255, ¶ 15. If "release" were interpreted as meaning "discharged" or have all claims "dismissed" following the granting of a new trial, then there would be no need to demonstrate that no criminal proceeding was brought within a year or for a clawback provision should the criminal proceeding be brought outside the one-year window.

{¶ 28} Subdivision (A)(5) must also be read in the context of the overall purpose of R.C. 2743.48. *See Vossman v. Airnet Sys., Inc.*, 2020-Ohio-872, ¶ 14, citing *Great Lakes Bar Control, Inc. v. Testa*, 2018-Ohio-5207, ¶ 8. Under R.C. 2743.48, individuals are entitled to file a civil complaint to be declared "wrongfully imprisoned individuals," the first step in seeking remuneration for the time they are wrongfully imprisoned. One of the factors that an individual must demonstrate is that an "error in procedure . . . resulted in the individual's release." Although

"release" is not modified to be limited to "released from prison" — in other words, one can ask the question "released from what?" — the term "release" is used in the context of determining whether an imprisonment was wrongful. The statute answers the question. The "release" must be from imprisonment.

{¶ 29} "Imprisonment" is a term of art under the Ohio Revised Code. R.C. 1.05(A) provides that "imprisoned" or "imprisonment" "means being imprisoned *under a sentence imposed for an offense* or serving a term of imprisonment, prison term, jail term, term of local incarceration, or *other term under a sentence imposed for an offense . . . .*" (Emphasis added.) *Id.* Thus, a "term of imprisonment," or the term for one who is "imprisoned," is the length or duration of the final sentence imposed upon an offense and a term of local incarceration in jail, when also imposed as a sentence for an offense, is merely one method of serving such a sentence. *See State ex rel. McKee v. Cooper*, 40 Ohio St.2d 65, 73 (1974), citing R.C. 5141.01 ("term of imprisonment" is defined as "the duration of the state's legal custody and control over a person sentenced"). By definition, "imprisonment" or "imprisoned" does not include being detained or confined in lieu of bail pending resolution of an indictment, information, or complaint since the confinement is not a result of a sentence being imposed upon an offense. *State v. Trammell*, 2017-Ohio-8198, ¶ 25, fn. 4 (12th Dist.). Pretrial detention, or "confinement in lieu of bail while awaiting trial" in statutory parlance under R.C. 2967.191 (statutory section providing for the reduction of a prison term for related days of confinement), cannot be considered synonymous with "imprisonment."

{¶ 30} Ohio's Pretrial Release statute also tacitly recognizes this distinction. Under R.C. 2937.011, the statute upon which the trial court relied in releasing Sutton and Phillips on bail while the new trial was pending, "[u]nless the court orders the defendant *detained* [as authorized by law], the court shall release the defendant on the least restrictive conditions" that ensures the defendant's appearances, protects the public, and that will not interfere with the criminal justice process. (Emphasis added.) *Id*. Thus, a defendant awaiting trial is not "imprisoned" but is merely "detained" unless the court grants pretrial release.

{¶ 31} The plaintiffs' detention following the reversal of their convictions in *Sutton*, 2021-Ohio-854, which resulted in their release from imprisonment, has no bearing on R.C. 2743.48(A)(5). Contrary to the State's argument, the trial court added no new language to the statute by concluding that the plaintiffs were released from prison as a result of the error in procedure identified in *Sutton*, 2021-Ohio-854. By its structure, R.C. 2743.48 contemplates that an individual's "release" is from imprisonment, the operative term in "wrongfully imprisoned individual." One form of imprisonment is a prison term. The State's argument that the pretrial detention demonstrates that Sutton and Phillips were not "released" as contemplated under R.C. 2743.48(A)(5) cannot be accepted without adding clarifying language to the statute, such as the individual must demonstrate that they are released from all forms of confinement or detention. Because courts cannot read language into a statute, the State's argument is overruled.

{¶ 32} In this case, the State expressly conceded in its brief in opposition to Sutton and Phillips's motions for summary judgment that they demonstrated the factors under R.C. 2743.48(A)(1)-(4). Again, that concession appears to have been premature in light of R.C. 2743.48(A)(4), which neither Sutton nor Phillips appear to have demonstrated given the procedural history of their retrials. The only issue presented to the trial court was the first alternative under subdivision (A)(5), or whether the error in procedure resulted in Sutton and Phillips's "release." Because they were released from their respective terms of imprisonment based on *Sutton*, 2021-Ohio-854, in which it was concluded that an error in procedure based on a *Brady* violation required the reversal and the vacating of the convictions directly leading to their release from imprisonment, Sutton and Phillips demonstrated the first alternative factor under R.C. 2743.48(A)(5). Any concerns with the impact of an appeal from *Sutton*, 2021-Ohio-854, or the eventual retrial could have been adequately addressed under R.C. 2743.48(A)(4). But the State conceded that factor in Sutton and Phillips's favor, and we cannot interpret R.C. 2743.48(A)(5)'s "release" language in the way the State desires to avoid the consequences of that concession. It had its opportunity to address the procedural posture of the retrial in determining whether Sutton and Phillips were "wrongfully imprisoned individuals," but for whatever reason, the State focused on the issue resolved in *Lemons* and the definition of the term "release."

{¶ 33} Because we conclude that the trial court did not err in granting summary judgment to Sutton and Phillips based on the arguments raised by the

State in response to their motions for summary judgment, we need not consider the State's second assignment of error, in which it claims the trial court erred by denying the State's motion for summary judgment.

{¶ 34} In light of the foregoing, we affirm the decision of the trial court.

{¶ 35} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
MICHAEL JOHN RYAN, J., CONCUR