[Cite as *State v. Trammell*, 2017-Ohio-8198.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | | CASE NOS. CA2016-11-220 |
| Plaintiff-Appellee, | : | CA2016-11-221 |
| | | CA2016-11-222 |
| | : | |
| - vs - | | O P I N I O N |
| | : | 10/16/2017 |
| | | |
| GREGORY LEN TRAMMELL II, | : | |
| | | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2013-12-1919


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Neal D. Schuett, 121 West High Street, Oxford, Ohio 45056, for defendant-appellant


**M. POWELL, J.**

{¶ 1}  Defendant-appellant, Gregory Len Trammell II, appeals his convictions in the Butler County Court of Common Pleas for possession of heroin, trafficking in heroin, possession of drug paraphernalia, and having weapons under disability.

{¶ 2}  In March 2014, appellant pled guilty to trafficking in cocaine and possession of cocaine in Case No. CR2013-09-1415, and to possession of cocaine, attempted trafficking in heroin, and attempted tampering with evidence in Case No. CR2013-12-1919.  Appellant was

sentenced to five years of community control and placed on probation in both cases. In June 2015, the probation department filed a report and notice of a community control violation in both cases. The events that formed the basis of appellant's community control violation and resulted in his convictions in the case at bar took place on June 15, 2015, in and near a house on Millikin Street in Hamilton, Ohio.

{¶ 3} On June 15, 2015, appellant's parole officer, Kendra Katherman, received a tip that appellant was trafficking in heroin and had guns and heroin at his known residence on Millikin Street where he lived with his girlfriend Krystal Jackson ("Jackson") and her children. The tipster was a woman who knew appellant and who had been inside the Milliken Street residence the day before. Acting on this information, Officer Katherman called appellant into her office for a random drug screen. Appellant tested negative for illicit substances. Subsequently, Officer Katherman accompanied by Hamilton Police Officer Brian Ungerbuehler drove to appellant's home to conduct a search, as authorized by the conditions of appellant's parole. Appellant was transported to the home, handcuffed in the back of Officer Ungerbuehler's cruiser. Appellant remained in the cruiser during the parole search.

{¶ 4} At the house, Officers Katherman and Ungerbuehler were met at the door by Jackson. Upon entering the home, the officers asked Jackson whether there was anything of concern in the home. Jackson replied there was marijuana. The officers then inquired about a safe. Jackson replied it was in the master bedroom. She then took the officers to the bedroom, removed a safe from underneath a dresser, and opened the safe with a digital code. Inside the safe were two handguns, a Jennings handgun and a Derringer handgun, four clear plastic baggies of heroin for a total weight of 45.6 grams (or about two ounces), and $1,677 in cash. The officers further observed a loaded SKS assault rifle inside a closet in the master bedroom. A search warrant for the residence was then obtained.

{¶ 5} Upon executing the search warrant, Hamilton Detective Greg Baker and Officer Ungerbuehler found two additional handguns, a Jimenez handgun and a Ruger handgun, ammunition, two digital scales, and additional cash in the master bedroom. The officers further found drug paraphernalia in the basement of the home, including a C-clamp, Inositol powder, and a blender. Of the five weapons found in the home, only the Ruger handgun was inoperable.[1] The street value of the heroin found in the safe was about $4,500.

{¶ 6} Inside the house, the officers found men's clothing in the master bedroom and children's clothing and toys in the second bedroom. The men's clothing, which appeared to be in appellant's size, was located in the closet, on the floor, and on the side of the bed, and included baseball hats, bottoms, shirts, and "a lot of shoes." The officers further found mail addressed to appellant in the master bedroom and the kitchen. One was a utility bill, the other from the Butler County Board of Elections. The officers found no evidence connecting any other adults to the house besides appellant and Jackson.

{¶ 7} Appellant was indicted in August 2015 on one count of possession of heroin, one count of trafficking in heroin, and four counts of having weapons under disability, all felonies, and one count of misdemeanor possession of drug paraphernalia. The matter proceeded to a jury trial on September 7, 2016. At trial, Officers Katherman and Ungerbuehler, Detective Baker, and Lieutenant Wade McQueen testified on behalf of the state; appellant testified on his own behalf.

{¶ 8} Officer Ungerbuehler testified appellant admitted that all of the items found in the house were his, including the weapons, and never indicated that the heroin, weapons, and cash belonged to someone else. Detective Baker testified that the four baggies of heroin found in the safe were packaged and prepared for sale, and that the drug paraphernalia

---

1. Because the Ruger was not operable, appellant was not indicted for having it in the house.

found in the house was used in drug trafficking.

{¶ 9} As stated above, appellant remained in the cruiser during both searches. The cruiser was equipped with an audio-video recording device. During the search of the home, appellant was recorded talking to himself, specifically mentioning "five guns, two ounces of dope" and "the SK," and lamenting as to why he had not removed the contraband from the house: "All you would have had done was take the SK, go get that, get them out of the safe, and take them somewhere. You gonna ruin the rest of your life for that mistake. * * * We're talking about five guns, two ounces of dope, I'm pretty scared."

{¶ 10} Appellant was further recorded talking to Jackson and police officers. During the parole search, appellant repeatedly admitted to the police that everything in the house was his. By contrast, after Lieutenant McQueen advised appellant of his *Miranda* rights, appellant denied there were any drugs in the house, denied the cash was his, and stated there were only two guns in the house, including a Ruger handgun in the basement. On the other hand, appellant admitted that the scale and the men's clothing were his. Appellant further stated, "Everything in the house is mine. I just don't know where everything is. I wasn't living there, she was with another man." While talking to Jackson, appellant can be heard stating, "You don't have to give them access to the safe. You did? Ah, that's a problem." The recording was played to the jury during Lieutenant McQueen's testimony.

{¶ 11} At trial, appellant claimed that he, Jackson, and her two children had moved into the home only a month before the June 15, 2015 search. Appellant further claimed that other people had lived in the home, including Jackson's sister and "for a brief period of time, Timothy Ambach," a drug dealer. Appellant testified that following a falling out with Jackson, he moved out of the house on June 12, 2015. Soon after, Ambach started living in the house. Appellant eventually reconciled with Jackson and moved back in the house in the

early morning of June 14, 2015. Appellant testified that when he was called to submit to a random drug screen on June 15, 2015, he had spent the previous night in the Milliken Street residence. Appellant stated that while he used to have a key to the house before he moved out on June 12, 2015, he did not have one on June 15, 2015, as he had just moved back into the house.

{¶ 12} Appellant admitted he bought the Ruger handgun ostensibly to protect himself from Ambach, but had it disabled as he could not possess a weapon as a convicted felon. Appellant denied trafficking in heroin and denied that the other four weapons, the heroin, and the men's clothing were his. Rather, appellant claimed that the Jimenez handgun belonged to Jackson, and that the other three weapons, the heroin, the cash, and the men's clothing all belonged to Ambach and had been left by Ambach when the latter moved out of the house.[2] Appellant testified he called Ambach to come retrieve the weapons, drugs, and money, but that Ambach "did not show up." Appellant admitted he knew that the Jimenez, Jennings, and Derringer handguns, the SKS rifle, and the heroin were in the house after he moved back on June 14, 2015.

{¶ 13} On September 8, 2016, the jury found appellant guilty as charged. The trial court merged all four counts of having weapons under disability into a single count of having weapons under disability, and merged the heroin possession count into the heroin trafficking count. On October 31, 2016, appellant was sentenced to an aggregate 11-year prison term in the case at bar. He was further sentenced for violating the terms of his community control in the two prior, unrelated cases, to wit: appellant was sentenced to an aggregate 24-month

---

2. The record shows that a receipt bearing Jackson's name was found with the Jimenez handgun. Jackson told the police that the handgun was hers. Officer Ungerbuehler testified that in his experience, it is common for people who are prohibited from purchasing firearms to have others make a straw purchase for them.

prison term in Case No. CR2013-09-1415, and an aggregate 30-month prison term in Case No. CR2013-12-1919. The trial court ordered that appellant's prison sentence for attempted tampering with evidence in Case No. CR2013-12-1919 be served consecutively to appellant's aggregate prison sentence in Case No. CR2013-09-1415, and that appellant's prison sentence for heroin trafficking in the case at bar be served consecutively to appellant's aggregate prison terms in both Cases Nos. CR2013-12-1919 and CR2013-09-1415.

{¶ 14} Appellant now appeals, raising four assignments of error. The third and fourth assignments of error will be addressed together.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE APPELLANT'S RIGHT TO A FAIR TRIAL WAS PREJUDICED WHEN THE TRIAL COURT ABUSED ITS DISCRETION AND ADMITTED INADMISSIBLE HEARSAY EVIDENCE TO PROVE THAT MR. TRAMMELL WAS IN THE RESIDENCE PRIOR TO THE HOME SEARCH.

{¶ 17} During Officer Katherman's direct examination, the state elicited a single reference regarding the substance of the tip she had received and which led her to conduct a parole search of appellant's home. Specifically, Officer Katherman testified that what she found in appellant's home was exactly what was described in the tip. Then, in response to defense counsel's questions on cross-examination, Officer Katherman testified that the tipster was a woman known to the officer, the tipster had requested that her identity not be disclosed, and she placed credence in the tip due to her familiarity with the tipster. Defense counsel further established that Officer Katherman expected to find weapons and heroin in the home based upon the tip.

{¶ 18} The apparent purpose of the foregoing cross-examination was to suggest that Jackson, who lived in the house and was presumably aware of the presence of the weapons

and heroin, was the woman who tipped Officer Katherman in order to frame appellant for possession of the contraband to facilitate Jackson's relationship with Ambach, without interference from appellant. Consequently, on redirect examination, the state asked Officer Katherman whether the tipster had seen appellant in the home the day before the search. The officer replied, "yes, she did." Appellant objected on hearsay grounds and moved to strike the officer's answer. The trial court overruled the objection.

{¶ 19} In his first assignment of error, appellant solely takes issue with Officer Katherman's testimony on redirect examination that the tipster saw appellant in the house the day before the search. Appellant asserts that the officer's testimony is inadmissible hearsay because it was offered to prove the truth of the matter asserted, that is, that appellant was in the house the day before the search uncovered weapons, heroin, and drug paraphernalia, "and, thus, that his defense that the weapons and heroin were not his was not credible." The state does not dispute that the statement was hearsay but asserts it was allowed under the rule of curative admissibility, also known as the "opening the door" doctrine.[3]

{¶ 20} "Hearsay" is a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Officer Katherman's testimony on redirect examination that the tipster saw appellant inside the home on June 14, 2015, was inadmissible hearsay as it was offered to prove that appellant was inside the home the day before the search. Consequently, admission of this hearsay testimony was error.

{¶ 21} We decline to determine whether this hearsay testimony was allowed under the

---

3. Under the "opening the door" doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the trial court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission. *See State v. Dunivant*, 5th Dist. Stark No. 2003CA00175, 2005-Ohio-1497.

rule of curative admissibility. Rather, we find that admission of the hearsay testimony was harmless error. Evid.R. 103(A) provides that "[e]rror may not be predicated upon a ruling which admits * * * evidence unless a substantial right of the party is affected[.]" Given the ample evidence at trial that appellant was an occupant of the home, including his testimony that he moved back in the house and had slept there the night before the search, his admission to the police that the men's clothing was his, the presence of mail addressed to him in the house, and his recorded statements during the search while he waited in the police cruiser, we find there is no reasonable possibility Officer Katherman's hearsay testimony might have contributed to appellant's conviction, and thus, no "substantial right" of appellant was affected by the admission of the hearsay testimony. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735.

{¶ 22} Appellant's first assignment of error is overruled.

{¶ 23} Assignment of Error No. 2:

{¶ 24} THE APPELLANT'S RIGHT TO A SPEEDY AND FAIR TRIAL WAS PREJUDICED WHEN THE TRIAL COURT DENIED HIS MOTION TO DISMISS.

{¶ 25} Appellant argues the trial court erred in overruling his motion to dismiss the charges against him on speedy trial grounds. Appellant asserts he was not brought to trial within 270 days as required under R.C. 2945.71(C)(2). The record shows that appellant was arrested on June 15, 2015, and not brought to trial until September 7, 2016. In January 2016, appellant moved to dismiss the charges against him on speedy trial grounds pursuant to R.C. 2941.401. Following a hearing on the motion, the trial court denied the motion.[4]

---

4. R.C. 2941.401 was not applicable here because it relates to prisoners serving "a term of imprisonment in a correctional institution of this state." Appellant was incarcerated in the county jail awaiting trial and resolution of his pending indictment and community control violations. Thus, appellant was not "serving a term of imprisonment" nor was he "incarcerated in a "correctional institution."

{¶ 26} R.C. 2945.71(C)(2) provides that a person charged with a felony must be brought to trial within 270 days after his or her arrest. For purposes of calculating speedy-trial time, each day during which the defendant is held in jail in lieu of bail on the pending charge must be counted as three days. R.C. 2945.71(E). However, the triple count provision of R.C. 2945.71(E) applies only when the defendant is held in jail in lieu of bail *solely* on the pending charges. *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, ¶ 7. The triple count provision does not apply when the defendant is being held on a parole or probation-violation holder. *Id.* The record shows that during the period of time appellant was incarcerated on the pending charges, he was also being held for violating his probation in the two unrelated cases.

{¶ 27} The prosecution and the trial courts have a mandatory duty to try a defendant within the time frame provided by R.C. 2945.71. *State v. Watkins*, 12th Dist. Warren No. CA2013-02-017, 2014-Ohio-177, ¶ 12. A defendant not brought to trial within the relevant time constraints "shall be discharged," and "such discharge is a bar to any further criminal proceedings against him based on the same conduct." R.C. 2945.73(B) and (D).

{¶ 28} Following the denial of his motion to dismiss filed pursuant to R.C. 2941.401, appellant did not raise again the issue of a speedy trial violation to the trial court. Speedy trial provisions are not self-executing but must be asserted by a criminal defendant in a timely manner in order to avoid waiving such rights. *Parma v. Bambeck*, 8th Dist. Cuyahoga No. 96533, 2012-Ohio-171, ¶ 28; *Partsch v. Haskins*, 175 Ohio St. 139 (1963). "[F]ailure to file a motion to dismiss on speedy trial grounds prior to trial and pursuant to R.C. 2945.73(B) prevents [an appellant] from raising the issue on appeal." *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, ¶ 37. Accordingly, appellant's failure to file a proper motion to dismiss prior to trial pursuant to R.C. 2945.73(B) prevents him from raising the issue on appeal. *See State*

*v. DeCola*, 11th Dist. Ashtabula No. 2016-A-0037, 2017-Ohio-4232.

{¶ 29} Furthermore, appellant's brief merely asserts that "[e]ven with time tolled for defendant's motions, the State failed to bring Mr. Trammell to trial within 270 days. Therefore, Mr. Trammell's right to a speedy trial was violated[.]" An appellant has the burden of demonstrating error on appeal through an argument that is supported by citations to legal authority and facts in the record. *See* App.R. 16(A)(7). An appellate court may disregard an assignment of error if it fails to identify the relevant portions of the record from which the errors are based. *See* App.R. 12(A)(2). Appellant's brief neither argues when appellant was required to be tried nor establishes that he was tried outside of the time requirements. It is not this court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *Lebanon v. Ballinger*, 12th Dist. Warren No. CA2014-08-107, 2015-Ohio-3522, ¶ 27.

{¶ 30} Appellant's second assignment of error is accordingly overruled.

{¶ 31} Assignment of Error No. 3:

{¶ 32} THE STATE PRESENTED INSUFFICIENT EVIDENCE TO CONVICT APPELLANT.

{¶ 33} Assignment of Error No. 4:

{¶ 34} APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 35} In his third assignment of error, appellant argues his convictions for possession of heroin, trafficking in heroin, possession of drug paraphernalia, and having weapons under disability are not supported by sufficient evidence because the state failed to prove he knowingly controlled or possessed the drugs, weapons, and drug paraphernalia. In his fourth assignment of error, appellant argues his convictions for possession of heroin, trafficking in

- 10 -

heroin, and having weapons under disability are against the manifest weight of the evidence because there was no credible evidence he lived in the house, and thus that he knowingly possessed the drugs and weapons.

**{¶ 36}** When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Bradbury*, 12th Dist. Butler No. CA2015-06-111, 2016-Ohio-5091, ¶ 16. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶ 37}** A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *Bradbury* at ¶ 17. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* An appellate court will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.* at ¶ 18. A "determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Peyton*, 12th Dist. Butler No. CA2015-06-112, 2017-Ohio-243, ¶ 48.

**{¶ 38}** Appellant was convicted of possession of heroin in violation of R.C. 2925.11(A), trafficking in heroin in violation of R.C. 2925.03(A)(2), and possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance[.]" R.C. 2925.03(A)(2) provides that

> [n]o person shall knowingly * * * Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

R.C. 2925.14(C)(1) provides that "no person shall knowingly use, or possess with purpose to use, drug paraphernalia."

**{¶ 39}** Appellant was also convicted of having weapons under disability in violation of R.C. 2923.13(A)(3), which provides in relevant part that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if [t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." All four offenses required the state to prove "knowingly" as an element of the crime.

**{¶ 40}** A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B). A person has knowledge of circumstances when he is aware that such circumstances probably exist. *Id.* Knowledge can be ascertained from the surrounding facts and circumstances in the case. *State v. Anderson*, 12th Dist. Fayette No. CA2008-07-026, 2009-Ohio-2521, ¶ 28, citing *State v. Lott*, 51 Ohio St.3d 160 (1990).

**{¶ 41}** Possession means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation

- 12 -

of the premises upon which the thing or substance is found." R.C. 2925.01(K). Possession may be constructive or actual. *State v. Williams*, 12th Dist. Butler No. CA2014-09-180, 2015-Ohio-2010, ¶ 14.

{¶ 42} "An accused has 'constructive possession' of an item when the accused is conscious of the item's presence and is able to exercise dominion and control over it, even if the item is not within the accused's immediate physical possession." *State v. Jester*, 12th Dist. Butler No. CA2010-10-264, 2012-Ohio-544, ¶ 25. Constructive possession may be proven by circumstantial evidence alone. *Williams* at ¶ 15. Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession. *Id.*

{¶ 43} A person may knowingly possess or control property belonging to another; the state need not establish ownership to prove constructive possession. *Williams*, 2015-Ohio-2010 at ¶ 14. In addition, two or more persons may have possession of an object together if they have the ability to control it, exclusive of others. *State v. Weckner*, 12th Dist. Brown No. CA2001-06-009, 2002 Ohio App. LEXIS 1037, *6 (Mar. 11, 2002).

{¶ 44} Viewing the evidence in a light most favorable to the state, we find that circumstantial evidence shows that appellant had constructive possession of the drug paraphernalia. The record shows that the Milliken Street residence was appellant's given residence for parole purposes, the police found mail addressed to appellant in the home, appellant admitted to the police that the men's clothing found in the master bedroom was his, and there was no evidence connecting any other adults to the house besides Jackson and appellant. The record further shows that the bulk of the drug paraphernalia was in the basement of the house, two digital scales were found in the master bedroom, and appellant

generally admitted to the police that everything in the house was his, and specifically admitted that the scale was his. Appellant's conviction for drug paraphernalia possession was thus supported by sufficient evidence.

{¶ 45} Upon a thorough review of the record, we further find the jury did not lose its way in concluding appellant was an occupant of the home and knowingly controlled or possessed the heroin and weapons. Given the presence of mail addressed to appellant in the house, appellant's admission to the police that the men's clothing found in the master bedroom was his, and his testimony that he moved back in the house on June 14, 2015, the day before the search, and subsequently spent the night there, the record shows that appellant lived in the house or at the very least was an occupant of the home. *See Williams* (an individual need not reside at a particular address to possess drugs found inside).

{¶ 46} The record further shows that appellant had constructive possession of the heroin and weapons. While appellant testified the heroin and three of the weapons belonged to Ambach, and claimed the Jimenez handgun belonged to Jackson, appellant also testified he knew that the heroin and weapons were in the house when he moved back on June 14, 2015, the day before the search. Appellant was thus conscious of the contraband. *Williams*, 2015-Ohio-2010 at ¶ 14. In addition, during the search of the house, appellant generally admitted to the police that everything in the house was his. The record further shows that appellant had access to the contraband while he was in the house, and that he had the ability to exercise dominion and control over the contraband, as evidenced by his professed attempt to return it to Ambach and his recorded lamentation he should have moved it out of the house.

{¶ 47} These facts, taken together, show that appellant knowingly exercised dominion and control over the heroin and weapons, even if only for a short time. The crucial issue is

not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion and control over it. *State v. Bowerman*, 9th Dist. Medina No. 13CA0059-M, 2014-Ohio-4264, ¶ 7.

{¶ 48} With regard to drug trafficking, "[n]umerous courts have determined that plastic baggies, digital scales, and large sums of money are often used in drug trafficking which constitute circumstantial evidence that appellant was using these items to commit that crime." *State v. Harry*, 12th Dist. Butler No. CA2008-01-013, 2008-Ohio-6380, ¶ 50. *See also State v. Kutsar*, 8th Dist. Cuyahoga No. 89310, 2007-Ohio-6990; *State v. Fain*, 5th Dist. Delaware No. 06CAA120094, 2007-Ohio-4854; *State v. Smith*, 3d Dist. Union No. 14-01-28, 2002-Ohio-5051; and *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240.

{¶ 49} The police found four clear plastic baggies of heroin for a total weight of 45.6 grams (or about two ounces) and $1,677 in cash in a safe in the master bedroom, two digital scales and additional cash in that bedroom, and drug paraphernalia in the basement of the home, including a C-clamp, Inositol powder, and a blender. The total amount of cash found in the bedroom was $1,841. Detective Baker testified that the four baggies of heroin found in the safe were packaged and prepared for sale, and that the drug paraphernalia found in the house was used in drug trafficking. During the search, appellant admitted to the police that the scale was his and lamented when he found out Jackson had given police access to the safe. These facts, taken together, show that appellant was knowingly involved in trafficking in heroin.

{¶ 50} In light of the foregoing, we find that appellant's convictions for heroin possession, trafficking in heroin, and having weapons under disability are not against the manifest weight of the evidence. Our determination that these convictions are supported by the weight of the evidence is also dispositive of the issue of sufficiency. *Peyton*, 2017-Ohio-

243 at ¶ 48.

{¶ 51} Appellant's third and fourth assignments of error are overruled.

{¶ 52} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.