[Cite as *State v. Martin*, 2022-Ohio-1494.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 110549 |
| JOJWAN MARTIN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 5, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-06-490688-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Mary M. Frey, Assistant Prosecuting Attorney, *for appellee.*

Patituce & Associates, LLC, Megan M. Patituce, and Joseph C. Patituce, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Plaintiff-appellant Jojwan Martin ("Martin") appeals the trial court's summary denial of his motion for leave to file a motion for new trial under Crim.R. 33 based on newly discovered exculpatory evidence. We find that the

appeal has merit, reverse the trial court's judgment, and remand the case for a hearing on the motion.

## I.  Background and Facts

{¶ 2}   On November 11, 2006, a vehicle driven by victim Antonio Williams ("Williams") crashed into a residence on Hecker Avenue in Cleveland, Ohio. Williams had been shot and was transported to the hospital and ultimately died of pneumonia on December 19, 2006.  The autopsy recovered a bullet from Williams's spine that was too deformed for a weapons comparison.

{¶ 3}   "On January 5, 2007, a Cuyahoga County Grand Jury indicted [Martin] on one count of aggravated murder, in violation of R.C. 2903.01(A), with a firearm specification under R.C. 2941.145."  *State v. Martin*, 8th Dist. Cuyahoga No. 91276, 2009-Ohio-3282, ¶ 3 ("*Martin I*").

{¶ 4}   On February 11, 2008, the case proceeded to a jury trial.  The source of the deformed bullet could not be identified. Police testified that Martin was arrested with another individual and a 9 mm weapon was retrieved.  Possession of the weapon was attributed to Martin.

{¶ 5}   Earwin Watters ("Watters") and Debby Crayton ("Crayton") served as key witnesses in the case.  Voir dire of these witnesses was conducted outside the presence of the jury.  Watters advised that he was incarcerated for a pending federal case for conspiracy to traffic crack cocaine and illegal firearms.  The Federal Bureau of Investigation ("FBI") asked whether Watters had information about unsolved homicides in his neighborhood and Watters responded that he was at the scene of

the shooting involved in the instant case. The FBI contacted the investigating detective at the Cleveland Police Department ("CPD"). Watters made a proffer to the FBI and hoped to obtain a benefit from his trial cooperation. Watters advised that he was aware that the county prosecutor would advise the FBI of his contribution and his potential sentence could be reduced.

{¶ 6} Watters testified at trial

> on the day of the shooting, he went into Papi's, a store on the corner of East 71st and Hecker Avenue. As he walked into Papi's, he noticed [Martin] talking to a man in a vehicle on the opposite side of the street. When Watters was inside the store, he heard screeching tires and a gunshot. He looked out the glass door of the store and saw [Martin] on foot chasing after the car. Watters ran in the opposite direction and heard two more gunshots.

*Martin I* at ¶ 8.

{¶ 7} Watters also testified that he did not immediately come forward because of a pending federal drug case but upon inquiry by the FBI, he agreed to provide the FBI and CPD with information that he was present at the shooting. Watters denied at trial that he had been promised a benefit for his testimony but admitted during cross-examination that his sentence in the federal case could possibly be reduced if he testified.

{¶ 8} Crayton stated during voir dire that she was doing her hair in the bathroom of her second-floor residence near East 71st and Hecker Street. Crayton stepped into the tub to look out of her bathroom window, was familiar with Martin, and saw him running down Hecker with a gun but did not see Martin fire a gun. Crayton also heard a vehicle repeatedly accelerate as if it was stuck in the mud.

**{¶ 9}** Crayton's trial testimony was a more detailed version of her voir dire testimony. However, the day prior to her trial testimony, the state advised the defense that Crayton had just disclosed that she heard Martin make a statement while running. Over objection, Crayton testified that she saw Martin "running down Hecker Street with a gun in his hand, yelling 'that's what you do for motha f***s.'" *Id*. at ¶ 9. In addition to the newly revealed oral statement, Crayton provided a detailed timeline of events that was not set forth in prior statements.

**{¶ 10}** "The jury found appellant not guilty of aggravated murder, but guilty of murder and the firearm specification." *Id*. at ¶ 3. Martin was sentenced to 18 years to life with eligibility for parole after 18 and one-half years, and a three-year firearm specification to be served prior and consecutive to the life sentence. Martin was also fined $20,000 and postrelease control was imposed.

**{¶ 11}** This court affirmed the convictions and observed as to Watters:

> While it is true that Watters may receive a reduced federal sentence based upon his testimony, Watters had not been guaranteed anything for his testimony. Further, the jury heard the testimony regarding the possible deal, and it was not unreasonable for them to believe Watters's testimony in spite of this. Watters was able to provide the jury with a detailed account of the incident.

*Martin I* at ¶ 35. We also acknowledged that there were inconsistences in Crayton's statements but that her testimony was corroborated by Watters's testimony. *Id*. at ¶ 37.

**{¶ 12}** In 2011, Watters retracted his statement and advised that the information for his testimony was provided to him by the authorities and that he

testified to secure a shorter federal sentence. We extract a portion of the background information from the opinion of the Ohio Supreme Court in the disciplinary action finding that Martin's postconviction counsel Cheselka, who took over four years to submit a 2016 petition for postconviction relief under R.C. 2953.21 based on Watters's information, committed misconduct:

> In early 2011, Watters contacted Martin's mother, Cynthia Bester, and told her that he had given false testimony against Martin under pressure from the police and prosecutors, that he had not actually witnessed Martin kill anyone, and that he wanted to recant his testimony. On March 14, 2011, Watters executed a handwritten affidavit stating that he had been pressured to give false testimony at Martin's trial to obtain a lesser sentence in his own criminal case. Bester sent Watters's affidavit and other materials regarding Martin's case to the Ohio Innocence Project at the University of Cincinnati College of Law, but the project declined to take the case and returned the file to Bester in May 2012.
>
> Bester and her mother met with Cheselka in November 2012 and gave him Watters's affidavit. Cheselka agreed to file a petition for postconviction relief on Martin's behalf for a flat fee of $10,000 (plus $525 for a copy of the trial transcript), which Bester and her mother paid in installments from 2013 to 2015.
>
> Between August 2013 and March 2016, Cheselka asked Watters to write and execute four additional affidavits — which he later claimed were necessary to correct procedural and substantive defects in Watters's original affidavit. But Cheselka did not file Martin's petition for postconviction relief until May 13, 2016 — approximately three and a half years after he first met with Bester and received Watters's 2011 affidavit. And even then, Watters had not signed the affidavit that Cheselka notarized and submitted with Martin's petition for postconviction relief.

*Disciplinary Counsel v. Cheselka*, 159 Ohio St.3d 3, 2019-Ohio-5286, 146 N.E.3d 534, ¶ 6-8.

{¶ 13} The court determined:

Because Cheselka filed the petition more than 365 days after the transcript was filed in Martin's direct appeal, he was required to show that Martin had been unavoidably prevented from discovering the facts that supported the petition. See R.C. 2953.21(A)(2) and 2953.23(A)(1). In the petition, Cheselka explained that Martin "was unavoidably delayed beyond the 365-day deadline because Earwin Watters only provided his unsolicited affidavit in 2016, well-past the statute's general rule and under circumstances unanticipated by [Martin]." (Emphasis added.) Cheselka failed to mention that Watters first came forward to recant his testimony in 2011 and that he had executed four previous affidavits. Cheselka continued that deception in his May 2017 response to relator's letter of inquiry, in which he affirmatively stated that "[t]here was no affidavit provided in 2011" and that "[t]here was never a proper affidavit executed before March of 2016." And at his disciplinary hearing, Cheselka admitted that there was no legally significant difference between the first and final affidavits. The trial court denied Martin's postconviction petition without an opinion.

*Id.* at ¶ 9.[1]

{¶ 14} The court found:

The board found that Cheselka's conduct violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 3.3(a) (prohibiting a lawyer from knowingly making a false statement of fact or law to a tribunal), 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter), and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*Id.* at ¶ 10.

{¶ 15} Notwithstanding Cheselka's malfeasance, the court concluded:

Citing the insufficiency of the evidence, however, the board recommends that we dismiss relator's allegations that Cheselka had failed to reasonably communicate with Martin and that Cheselka had failed to promptly refund any unearned portion of his fee at the conclusion of his representation. We adopt the board's findings of

---

[1] In fact, Cheselka specifically represented to the trial court in the 2016 petition that Watters did not come forward until 2016.

misconduct and dismiss the remaining allegations of misconduct with respect to this count.

*Cheselka* at ¶ 10.[2] The opinion was issued December 24, 2019.

{¶ 16} Martin and family was advised that they were unable to recover the $10,000 that his mother paid to Cheselka to secure new counsel until 2020. Counsel filed the instant motion for leave to file a motion for a new trial on July 17, 2020, approximately six months after the *Cheselka* decision. The current motion for leave to file a motion for a new trial under Crim.R. 33(B) is accompanied by multiple supporting exhibits. The motion for leave details conflicts in the trial testimony by and between key witnesses Watters and Crayton and provides substantiating documentation to support Watters's statement that he falsified his testimony for the purpose of receiving a shorter sentence as well as support for Martin's other related arguments for relief.

{¶ 17} The state's brief in opposition was filed on September 17, 2020. The trial court issued a summary decision without a hearing on May 18, 2021.

## II. Assignment of Error

{¶ 18} Martin assigns a single error on appeal: The trial court abused its discretion in denying Martin's motion for leave to file a motion for a new trial. We agree, reverse the judgment, and remand the case for a hearing.

---

[2] There were several criminal case grievants involved in the *Cheselka* action.

## III. Discussion

### A. Standard of Review

{¶ 19} "This court reviews the denial of leave to file a delayed motion for a new trial for an abuse of discretion." *State v. Sutton*, 2016-Ohio-7612, 73 N.E.3d 981, ¶ 13 (8th Dist.). An abuse of discretion is not simply an error of law or judgment, but implies the court's attitude is unreasonable, arbitrary, or unconscionable. *State v. Yates*, 8th Dist. Cuyahoga No. 96664, 2011-Ohio-4962, ¶ 5.

### B. Law

{¶ 20} Crim.R. 33(B) requires that "Motions for a new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived." *Id.* "A party who fails to file a motion for new trial within the prescribed timeframe must seek leave from the trial court to file a delayed motion for new trial." *State v. Hill*, 8th Dist. Cuyahoga No. 108250, 2020-Ohio-102, ¶ 15, citing *State v. Hale*, 8th Dist. Cuyahoga No. 107782, 2019-Ohio-1890, ¶ 9.

{¶ 21} Historically, courts have been guided by the two-pronged requirement that a movant demonstrate by clear and convincing evidence that the movant: (1) "was unavoidably prevented from filing the motion for a new trial" *and* (2) "sought leave within a reasonable time after discovering the evidence." (Emphasis added.) *Id.*, citing *id.*

{¶ 22} The Ohio Supreme Court has recently examined Crim.R. 33(B) to determine whether the rule imposes a reasonable time requirement in *State v. Bethel*, Slip Opinion No. 2022-Ohio-783. *Bethel* clarifies the scope and focus of our Crim.R. 33(B) review and addresses issues relating to R.C. 2953.21 postconviction relief. The court examined Crim.R. 1(B) and 57(B) upon which courts have relied in imposing a reasonable time filing requirement under Crim.R. 33(B). *Id.* at ¶ 55, citing *State v. Thomas*, 2017-Ohio-4403, 93 N.E.3d 227, ¶ 8 (1st Dist.).

{¶ 23} The court applied "general principles of statutory construction" and determined that the cited rules do not authorize or support the "creation of a reasonable-time filing requirement" under Crim.R. 33(B). *Id.* at ¶ 55. The court held that the appellate court's finding that "it was within the trial court's discretion to deny *Bethel's* motion for leave based on *Bethel's* failure to file the motion within a reasonable time after discovering" the purported new evidence was in error. *Id.* at ¶ 58.

{¶ 24} Thus, our review is guided by *Bethel's* determination that Crim.R. 33(B) "states only that a defendant must show that he was 'unavoidably prevented from the discovery of the evidence upon which he must rely.'" *State v. Bethel*, Slip Opinion No. 2022-Ohio-783, ¶ 53. The court further explained that "[t]he 'unavoidably prevented' requirement in Crim.R. 33(B) mirrors the 'unavoidably prevented' requirement in R.C. 2953.23(A)(1)." *Id.* at ¶ 59, citing *State v. Barnes*, 5th Dist. Muskingum No. CT2017-0092, 2018-Ohio-1585, ¶ 28.

{¶ 25} Our focus shifts to whether, to obtain leave, Martin has demonstrated "by clear and convincing evidence that he was unavoidably prevented from discovering the new evidence within the 120-day time period." *State v. Dues*, 8th Dist. Cuyahoga No. 105388, 2017-Ohio-6983, ¶ 10, citing *State v. Mathis*, 134 Ohio App.3d 77, 79, 730 N.E.2d 410 (1st Dist. 1999).

{¶ 26} "Clear and convincing evidence is 'the amount of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.'" *State v. Metcalf*, 2d Dist. Montgomery No. 26101, 2015-Ohio-3507, ¶ 10, citing *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180, 512 N.E. 2d 979 (1987).

C. **Discussion**

{¶ 27} The events that transpired as of 2011 when Watters came forward to recant are set forth in the *Cheselka* opinion. *Cheselka*, 159 Ohio St.3d 3, 2019-Ohio-5286, 146 N.E.3d 534. The state argues that the former counsel's misconduct does not render the delays in this case reasonable and that Martin was not constitutionally entitled to the effective assistance of counsel in a state postconviction proceeding under R.C. 2953.21 and 2953.23 based on *State v. Lott*, 8th Dist. Cuyahoga Nos. 79790, 79791, and 79792, 2002-Ohio-2752, ¶ 10 ("[a] postconviction relief proceeding is a collateral civil attack on a judgment"). *Id.*

{¶ 28} Pursuant to *Bethel*, reasonableness in the delay is no longer a factor and we consider the argument as an element underlying unavoidable prevention. In *Bethel*, the court clarified that a Crim.R. 33 "motion for a new trial is not a collateral

challenge — a motion for a new trial is an attempt to void or correct the judgment as provided by law under Crim.R. 33." *Bethel*, Slip Opinion No. 2022-Ohio-783, at ¶ 44. "[I]t is clear that under Ohio law, a motion for leave to file a motion for a new trial is not a collateral challenge under R.C. 2953.21(K)." *Id.* at ¶ 49.[3]

{¶ 29} "[I]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. (Citations omitted). Counsel in this case violated Prof.Cond.R. 1.3, 3.3(a), and 8.1(a), the latter involving dishonesty, fraud, deceit, or misrepresentation. *Cheselka*, 159 Ohio St.3d 3, 2019-Ohio-5286, 146 N.E.3d 534, at ¶ 10. We find that Martin's argument that ineffective assistance of counsel under the unique facts of this case constitutes a cognizable claim that Martin was unavoidably prevented from presenting the newly discovered evidence in this case. *Hill*, 8th Dist. Cuyahoga No. 108250, 2020-Ohio-102, at ¶ 15,

{¶ 30} The state also argues that the current motion is barred by res judicata based on the 2016 summary denial of the R.C. 2953.21 petition for postconviction relief filed by former counsel Cheselka that Martin argues was unauthorized. The state offers that the current Crim.R. 33 motion advances the

---

[3] R.C. 2953.21(K) provides, "Subject to the appeal of a sentence for a felony that is authorized by section 2953.08 of the Revised Code, the remedy set forth in this section is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or sentence in a criminal case or to the validity of an adjudication of a child as a delinquent child for the commission of an act that would be a criminal offense if committed by an adult or the validity of a related order of disposition."

same arguments as the 2016 motion and that in spite of the multiple exhibits filed with Martin's current motion only the Watters affidavit is relevant. The state cites *State v. Bridges*, 8th Dist. Cuyahoga Nos. 103634 and 104506, 2016-Ohio-7298, ¶ 26 (*Bridges III*"), in support of the premise that "arguments raised in a motion for leave that were previously raised in a prior petition for postconviction relief are barred by res judicata." Appellee's brief, p. 18.

{¶ 31} We find that *Bridges III* is distinguishable. *Bridges III* involved a pro se appeal of a trial court's denial of Bridges's "motion for leave to file a delayed motion for new trial and his postconviction motion to correct an error in his conviction." *Id*. at ¶ 1. Bridges filed a direct appeal in *State v. Bridges*, 8th Dist. Cuyahoga No. 100805, 2014-Ohio-4570 ("*Bridges I*") and a petition for postconviction relief under R.C. 2953.21 in *State v. Bridges*, 8th Dist. Cuyahoga Nos. 102930 and 103090, 2015-Ohio-5428, ¶ 10 ("*Bridges II*").

{¶ 32} Bridges filed multiple postconviction motions while *Bridges I* was pending and for several years afterward. We determined in *Bridges III* that res judicata applied because the issues posed in the current Crim.R. 33 motion either should have been raised in *Bridges I* or were reiterations of arguments made in *Bridges I* and *Bridges II*.

{¶ 33} In contrast to the instant case, the trial court denied Bridges's petition without a hearing, but issued detailed findings of fact and conclusions of law that detailed the grounds for the denial. *Bridges III*, 8th Dist. Cuyahoga Nos. 103634 and 104506, 2016-Ohio-7298, at ¶ 4. In this case, the record does not

reveal whether the trial court's summary denial was due to consideration of the merits of the case or the failure to submit a signed affidavit that was construed as a failure to support the petition or improper submission.

{¶ 34} *Bethel* also addressed the doctrine of res judicata regarding the *Brady* claim under the R.C. 2953.21 petition. The state argued that *Bethel* could have discovered the information earlier and relied on several Ohio appellate cases that "applied res judicata to prevent a convicted defendant from raising postconviction issues in a piecemeal fashion." *Bethel*, Slip Opinion No. 2022-Ohio-783, at ¶ 17, citing *State v. Bene*, 11th Dist. Lake Nos. 2019-L-070, 2019-L-071, and 2019-L-072, 2020-Ohio-1560, ¶ 13-14. The court disagreed and advised that where the state raises the doctrine of res judicata, the state has the "burden of showing" that the defendant could have asserted the claim earlier. Based on the unique facts of this case, res judicata does not apply.

{¶ 35} As we have acknowledged, the instant motion filed approximately sixth months after *Cheselka* was issued, is accompanied by multiple supporting exhibits. In addition to a proper affidavit from Watters, Martin provides an affidavit from his mother and his own affidavit to supplement the *Cheselka* submissions as well as the additional evidence to substantiate Watters's claim. The exhibits also contain statements from Crayton and various CPD reports.

{¶ 36} A defendant that submits documents that on their face support the claim of being unavoidably prevented from timely discovering the new evidence is entitled to a hearing. *Metcalf*, 2d Dist. Montgomery No. 26101, 2015-Ohio-3507,

¶ 10; *State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, 869 N.E.2d 77, ¶ 19 (2d Dist.). "It is at the hearing on the motion for leave that the court must determine whether the petitioner met his burden of clearly and convincingly showing that he was indeed unavoidably prevented from discovering the evidence." *State v. Phillips*, 2017-Ohio-7164, 95 N.E.3d 1017, ¶ 25 (8th Dist.).

{¶ 37} Because Martin submitted evidence that on its face showed he was unavoidably prevented from discovering and presenting the evidence sooner, he was entitled to a hearing on his motion for leave. We find that the assignment of error has merit and for that reason is sustained.

## IV. Conclusion

{¶ 38} Judgment reversed and remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

EMANUELLA D. GROVES, J., CONCURS;
MICHELLE J. SHEEHAN, J., CONCURS IN JUDGMENT
ONLY WITH SEPARATE OPINION

MICHELLE J. SHEEHAN, J., CONCURRING IN JUDGMENT ONLY:

{¶ 39} I respectfully concur in judgment only. I would reverse the judgment of the trial court denying the motion for leave to file a new trial but would remand this matter for the trial court to consider the motion for leave to file a motion for new trial under the standards of law announced in *State v. Bethel*, Slip Opinion No. 2022-Ohio-783.